UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

JERRY L. TJEPKES,

          Plaintiff,

    v.                                    Civil No. 08-1064-HA

                                          OPINION AND ORDER

MICHAEL J. ASTRUE,
Commissioner of Social Security,

          Defendant.

_____

HAGGERTY, District Judge:

      Plaintiff Jerry L. Tjepkes seeks judicial review of a final decision by the Commissioner

of the Social Security Administration denying his application for Disability Insurance Benefits

(DIB) and Supplemental Security Income (SSI). This court has jurisdiction to review the

Commissioner's decision under 42 U.S.C. § 405(g). For the following reasons, the

Commissioner's decision is affirmed.

1   - OPINION AND ORDER

## STANDARDS

To establish eligibility for benefits, a plaintiff has the burden of proving an inability to engage in any substantial gainful activity (SGA) "by reason of any medically determinable physical or mental impairment" that has lasted or can be expected to last for a continuous period of not less than twelve months.  42 U.S.C. § 423(d)(1)(A).  Additionally, for the purposes of DIB, a plaintiff has the burden of proving disability prior to the termination of his or her insured status.  *Tidwell v. Apfel*, 161 F.3d 599, 601 (9th Cir. 1999).

The Commissioner has established a five-step sequential evaluation process for determining if a person is eligible for benefits.  20 C.F.R. §§ 404.1520, 416.920.

First, the Commissioner determines whether the claimant is engaged in SGA.  If the claimant is so engaged, disability benefits are denied.

If not, the Commissioner proceeds to the second step and determines whether the claimant has a medical impairment that meets the regulatory definition of "severe."  20 C.F.R. § 404.1520(a).  If the claimant lacks this kind of impairment, disability benefits are denied.  20 C.F.R. § 404.1520(c).

If at least some of the claimant's impairments are severe, the Commissioner proceeds to the third step to determine whether the impairment or impairments are equivalent to one or more impairments that the Commissioner has recognized to be so severe that they are presumed to preclude SGA.  *See* 20 C.F.R. § 404.1520(d).  These are listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (Listing of Impairments or the Listings).  The Listings describe impairments which qualify as severe enough to be construed as *per se* disabling.  20 C.F.R. §§ 404.1525, 416.925;

*Tackett v. Apfel*, 180 F.3d 1094, 1099 (9th Cir. 1999).

The claimant has the burden of producing medical evidence that establishes all of the requisite medical findings for a listed impairment. *Burch v. Barnhart*, 400 F.3d 676, 683 (9th Cir. 2005); *Bowen v. Yuckert*, 482 U.S. 137, 146 (1987). If the claimant's condition meets or equals one in the Listing of Impairments, the claimant is presumed conclusively to be disabled.

If the impairment is not one that is presumed to be disabling, the Commissioner determines the claimant's residual functional capacity (RFC), which is the most an individual can do in a work setting despite the total limiting effects of all their impairments. 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1), and Social Security Ruling (SSR) 96-8p.

The Commissioner then proceeds to the fourth step to determine whether the impairment prevents the claimant from engaging in work that the claimant has performed in the past. If the claimant is able to perform his or her former work, a finding of "not disabled" is made and disability benefits are denied. *See* 20 C.F.R. § 404.1520(e).

If the claimant is unable to perform work that he or she has performed in the past, the Commissioner proceeds to the fifth and final step and determines if the claimant can perform other work in the national economy in light of his or her RFC, age, education, and work experience.

In this five-step framework used by the Commissioner, the claimant has the burden of proof at steps one through four. Accordingly, the claimant bears the initial burden of establishing his or her disability.

At the fifth step, however, the burden shifts to the Commissioner to show there are a

significant number of jobs in the national economy that the claimant can perform given his or her

RFC, age, education, and work experience. *Gomez v. Chater*, 74 F.3d 967, 970 (9th Cir. 1996).

If the Commissioner cannot meet this burden, the claimant is considered disabled for

purposes of awarding benefits under the Act. 20 C.F.R. § 404.1520(f)(1). If the Commissioner

meets this burden, the claimant is deemed not disabled for purposes of determining benefits

eligibility. 20 C.F.R. §§ 404.1566, 404.1520(g).

The Commissioner's decision must be affirmed if it is based on proper legal standards

and its findings are supported by substantial evidence in the record as a whole. 42 U.S.C. §

405(g); *Tackett*, 180 F.3d at 1097; *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995).

Substantial evidence is more than a scintilla but less than a preponderance; it is "such relevant

evidence as a reasonable mind might accept as adequate to support a conclusion." *Sandgathe v.

Chater*, 108 F.3d 978, 980 (9th Cir. 1997) (citation omitted). The Commissioner's denial of

benefits is upheld even if the evidence is susceptible to more than one rational interpretation, so

long as one of the interpretations supports the decision of the Administrative Law Judge (ALJ).

*Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002); *Andrews*, 53 F.3d at 1039-40.

The court must weigh all of the evidence, whether it supports or detracts from the

Commissioner's decision. *Tackett*, 180 F.3d at 1098. The Commissioner, not the reviewing

court, must resolve conflicts in the evidence, and the Commissioner's decision must be upheld in

instances where the evidence supports either outcome. *Benton v. Barnhart*, 331 F.3d 1030, 1035

(9th Cir. 2003); *Reddick v. Chater*, 157 F.3d 715, 720-21 (9th Cir. 1998).

However, a decision supported by substantial evidence must be set aside if the

Commissioner did not apply the proper legal standards in weighing the evidence and making the decision. *Reddick*, 157 F.3d at 720.

**FACTS**

The relevant facts, which are drawn from the extensive administrative record and the ALJ's decision, are summarized here. Plaintiff was thirty-three years old at the alleged disability onset date and forty-eight years old at the time of the ALJ's decision. Plaintiff completed the tenth grade in special education and later obtained his General Educational Development (GED) degree. Plaintiff has past relevant work experience as a concrete finisher, carpenter, and excavation laborer.

Plaintiff protectively applied for benefits on March 31, 1997, alleging disability beginning December 31, 1994. Plaintiff alleges disability from physical and mental impairments including: foot deformities, osteo-arthritis, mental impairments, and chronic hand pain. Plaintiff's application was denied initially and on reconsideration. An ALJ conducted a hearing on October 29, 1998. The ALJ's decision, issued December 2, 1998, found plaintiff disabled as of July 30, 1998. Disagreeing with the disability onset date, plaintiff filed a request for review by the Appeals Council, which subsequently remanded the case for further proceedings. In an April 1, 2002 decision, an ALJ found that plaintiff had at no time been disabled since the alleged onset date. A request for review was denied and plaintiff appealed to this court. This court remanded the case and required the Commissioner to search for a missing hearing tape or, in the alternative, for a de novo hearing. The tape was not located, and therefore an ALJ heard the case de novo. In a July 30, 2004 decision, an ALJ once again denied plaintiff's claims. Plaintiff requested review and the Appeals Council remanded the case for further proceedings. A new

5   - OPINION AND ORDER

ALJ conducted a hearing on October 19, 2006, at which he heard testimony from plaintiff, who was represented by counsel; Wayne Tjepkes, plaintiff's father; and a vocational expert (VE).

On November 14, 2006, the ALJ issued a decision finding that plaintiff was not disabled as defined in the Social Security Act.  The Appeals Council declined plaintiff's request for administrative review, making the ALJ's decision the final decision of the Commissioner for purposes of judicial review.  Plaintiff subsequently initiated this action.

## SUMMARY OF ALJ'S FINDING

At step one, the ALJ found that plaintiff had not engaged in SGA since his alleged disability onset date.  Tr. 30, Finding 2.[1]

At step two, the ALJ found that plaintiff had the following medically determinable severe impairments: club feet and mild obesity.  Tr. 30, Finding 3.

At step three, the ALJ found that plaintiff's impairments, singly or in combination, did not meet or equal the requirements of any listed impairment.  Tr. 30, Finding 4.

The ALJ determined that plaintiff has the RFC to lift ten pounds frequently and twenty pounds occasionally.  Tr. 30, Finding 5.  The ALJ determined that plaintiff can stand and walk for two hours of an eight-hour work day, and for ten minutes at a time.  *Id.*  Additionally, the ALJ found that plaintiff uses a cane to walk and is limited to occasional walking on uneven or rough surfaces, but plaintiff can occasionally climb, balance, stoop, kneel, crouch, and crawl.  *Id.* The ALJ finally noted that plaintiff should avoid hazards and that he is limited to simple, routine, repetitive work.  *Id.*

At step four, the ALJ found that plaintiff was incapable of performing his past relevant

---

[1] Tr. refers to the Transcript of the Administrative Record.

work.  Tr. 37, Finding 6.

At step five, the ALJ, after consulting with a VE, found that there are jobs that exist in

significant numbers in the national economy that plaintiff could perform.  Tr. 37-38, Finding 10.

**DISCUSSION**

Plaintiff contends that this court should reverse and remand the Commissioner's final

decision for further findings or for an award of benefits due to a number of alleged errors

including: (1) failing to find that plaintiff's condition met or equaled a listed impairment, (2)

improperly rejecting the opinion of a treating doctor, (3) failing to defer to lay witness testimony,

(4) failing to develop the record, and (5) erroneously determining plaintiff's RFC.

**1.     Plaintiff's Impairments**

Plaintiff argues that the ALJ erred in failing to find that plaintiff's foot condition meets or

equals a listed impairment.  Plaintiff asserts that Musculoskeletal Listings 1.02, "major

dysfunction of a joint(s)," and 1.03, "reconstructive surgery or surgical arthrodesis of a major

weight-bearing joint," each describe his condition.  In order to satisfy either listing, plaintiff must

demonstrate an inability to "ambulate effectively."  20 C.F.R § 404, Subpt. P, App. 1.  This term

is defined by the regulations:

> (1) Definition: Inability to ambulate effectively means an extreme limitation of
> the ability to walk; i.e., an impairment(s) that interferes very seriously with the
> individual's ability to independently initiate, sustain, or complete activities.
> Ineffective ambulation is defined generally as having insufficient lower extremity
> functioning to permit independent ambulation without the use of a hand-held
> assistive device(s) that limits the functioning of both upper extremities. . . .
> (2)  To ambulate effectively, individuals must be capable of sustaining a
> reasonable walking pace over a sufficient distance to be able to carry out
> activities of daily living. They must have the ability to travel without companion
> assistance to and from a place of employment or school. Therefore, examples of
> ineffective ambulation include, but are not limited to, the inability to walk without

the use of a walker, two crutches or two canes, the inability to walk a block at a reasonable pace on rough or uneven surfaces, the inability to use standard public transportation, the inability to carry out routine ambulatory activities, such as shopping and banking, and the inability to climb a few steps at a reasonable pace with the use of a single hand rail. The ability to walk independently about one's home without the use of assistive devices does not, in and of itself, constitute effective ambulation.

*Id.* Plaintiff argues that he cannot ambulate effectively as defined by the regulation.

The ALJ is required to evaluate the relevant evidence before making a determination that a claimant's condition does not meet or equal a listed impairment. *Marcia v. Sullivan*, 900 F.2d 172, 176 (9th Cir. 1990). A boilerplate finding is insufficient to support a conclusion that a claimant's impairment does not do so. *Id.*

In the present case, the ALJ acknowledged Dr. Schoen's opinion which found that plaintiff's condition met the Listings, effective at that time. The ALJ also noted that those Listings were effectively replaced on February 19, 2002. Tr. 30. The ALJ evaluated all the relevant evidence in light of the new regulations before reaching his conclusion. The ALJ noted that plaintiff has significant deformity resulting from degenerative changes in the subtalar and metatarsal joints. Tr. 31. The ALJ further noted that, while plaintiff uses a cane to assist in ambulation, a cane is not always used for his effective ambulation and "its use does not limit the functioning of *both* upper extremities." *Id.* Plaintiff correctly argues that the use of one cane does not necessarily preclude the ALJ from concluding that plaintiff meets the listing. Pl.'s Br. at 14 (citing Revised Medical Criteria for Determination of Disability, Musculoskeletal System and Related Criteria, 66 Fed. Reg. 58010, 58013 (Nov. 19, 2001)). However, plaintiff must still show an inability to ambulate effectively.

Even considering plaintiff's obesity, the ALJ found no evidence that the impairments

resulted in an inability to ambulate effectively.  Tr. 31.  The ALJ noted that plaintiff's condition improved with the use of orthotics and he was able to walk a city block and climb stairs slowly without using a handrail.  *Id.*  Finally, the ALJ explained that plaintiff reported to an evaluating physician that he was able to stand forty-five minutes to an hour before feeling discomfort.  *Id.*

The ALJ adequately evaluated all relevant evidence before concluding that plaintiff's conditions did not meet the criteria set forth in the Listings.  He provided detailed and specific reasons for the conclusion he reached and no further analysis is required.

**2.    Medical Source Opinion**

Plaintiff asserts that the ALJ erred in improperly rejecting the opinions of treating physicians.  Specifically, plaintiff argues that all of the doctors that treated plaintiff, including Drs. Harris, Maldonado, Schoen, Griffin, and examining Drs. Berselli, Baum, and Bachtell, consistently recognized his significant pedal deformities.

As treating medical experts, the opinions of Drs. Harris, Maldonado, Schoen, and Griffin cannot be lightly disregarded.  However, they are "not binding on an ALJ with respect to the existence of an impairment or the ultimate determination of disability."  *Tonapetyan v. Halter*, 242 F.3d 1144, 1148 (9th Cir. 2001) (citing *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989)).  The ALJ may reject the contradicted opinion of a treating or examining physician by stating specific and legitimate reasons, and may reject an uncontradicted treating or examining physician's opinion by providing clear and convincing reasons, supported by substantial evidence in the record.  *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005); *see also Lester v. Chater*, 81 F.3d 821, 830-32 (9th Cir. 1995).

Of the physicians that plaintiff argues were improperly disregarded, only Griffin,

9  - OPINION AND ORDER

Berselli, Bachtell, and Baum commented on plaintiff's functional limitations. First, Dr. Berselli opined, and the ALJ noted, that plaintiff was able to lift fifty pounds occasionally and twenty-five pounds frequently. Tr. 36. He noted that plaintiff could stand and walk for at least two hours of an eight hour work day, and he could occasionally climb, balance, stoop, kneel, crouch, and crawl. *Id.* The ALJ awarded Dr. Berselli's opinion significant weight, as he found it generally consistent with the medical evidence in the record. *Id.*

Also, the ALJ gave great weight to the opinion of Dr. Bachtell, an evaluating physician. Dr. Bachtell opined that plaintiff is able to stand and walk for two hours of an eight hour day and that he required a cane for ambulation. Tr. 661. He noted that plaintiff is able to sit without limitation and that he has no manipulative limitations. Tr. 661-62. The ALJ noted that Dr. Bachtell's opinion is consistent with that of Dr. Berselli, in that each doctor found that plaintiff was able to stand for two hours per day. Tr. 36. The record shows that plaintiff can walk without the use of a walker or two crutches. Tr. 31. Further, the record shows that plaintiff can walk at least a block and up to one half mile on occasion. Tr. 31, 35. Finally, the ALJ found it persuasive that no physician found his impairments to equal any current Listings. Tr. 31.

Plaintiff next argues that the ALJ erred in awarding little weight to the opinion of Dr. Griffin, a treating podiatrist. Doctor Griffin opined, and the ALJ noted, that plaintiff could stand and walk less than two hours in an eight hour day. *Id.* He found that plaintiff could only lift ten pounds occasionally and less than ten pounds frequently. *Id.* Finally, Dr. Griffin found that plaintiff could never climb, balance, crouch, or stoop. *Id.* The ALJ gave little weight to this opinion because he found it to be inconsistent with the evidence of record. *Id.* First, the ALJ noted that in a 1995 evaluation with Dr. Dordevich, plaintiff reported that he was "able to stand .

10 - OPINION AND ORDER

. . 45 minutes to 1 hour without undue problems." Tr. 196.  Similarly, the ALJ noted that

plaintiff was found able to be "up and active for an hour before needing to rest." Tr. 36.  As

stated above, the ALJ found it convincing that both Dr. Bachtell and Dr. Berselli independently

concluded that plaintiff could stand and walk for two hours.  *Id.*  The ALJ similarly found no

evidence in the record to support Dr. Griffin's finding that plaintiff could never climb, balance,

crouch, or stoop.  The ALJ supported his conclusion, explaining that plaintiff testified that he is

able to climb stairs with a banister.  *Id.*  The ALJ further noted that plaintiff often rides a bicycle

to the store and desired to obtain a physically active job as a heavy equipment operator.  *Id.*  By

reviewing the above evidence and providing specific reasons for his conclusions, the ALJ

properly rejected Dr. Griffin's opinion.

    Plaintiff contends that the ALJ improperly disregarded the opinion of Dr. Baum.  Doctor

Baum explained, and the ALJ noted, that it would be difficult for plaintiff to reach any potential

employment on a daily basis because he was unable to drive. Tr. 36.  Plaintiff would contend

that his inability to drive is a result of his impairments.  However, as the ALJ correctly noted,

plaintiff's inability to drive stems from his inability to afford auto insurance and is not a result of

his impairments.  Tr. 37.  Not only is plaintiff physically able to drive, he also reported that he is

able to walk up to one-half mile occasionally and sometimes rides his bike to the store.  Tr. 35.

By stating these specific reasons for his conclusion, the ALJ properly discredited Dr. Baum's

opinion on plaintiff's ability to commute to any potential employment.

    Finally, plaintiff argues that the ALJ improperly disregarded the opinion of Dr. Schoen,

plaintiff's treating podiatrist.  Dr. Schoen opined that plaintiff's impairment met the criteria of

listings 1.03A and B, which were in effect at that time. Tr.  221.  Under the amended listings, a

11 - OPINION AND ORDER

plaintiff must demonstrate an inability to ambulate effectively in order to satisfy the listing criteria. 20 C.F.R. § 404, Subpt. P, App. 1. As discussed above, the ALJ outlined clear and convincing reasons, explaining why the record demonstrates plaintiff's ability to ambulate effectively. Thus, the ALJ properly rejected the opinion of Dr. Schoen.

Plaintiff is correct in noting that the ALJ did not explain his consideration of the testimony of Drs. Harris and Moldonado. While Drs. Harris and Moldonado recognized and commented on plaintiff's condition and the pain it caused, neither doctor offered an opinion with respect to plaintiff's ability to ambulate effectively. Therefore, the ALJ's failure to mention their opinions was harmless error. *See Parra v. Astrue*, 481 F.3d 742, 747 (9th Cir. 2007) (error on the part of an ALJ that does not affect the result is harmless); *see also Stout v. Commissioner*, 454 F.3d 1050, 1055 (9th Cir. 2006) (even if an alleged error by the ALJ occurred, if it is inconsequential to the ultimate non-disability determination it is non-prejudicial).

**3.    Lay Witness Testimony.**

Plaintiff asserts that the ALJ erred by failing to properly address lay witness testimony. Specifically, plaintiff contends that the ALJ improperly disregarded the testimony of Wayne Tjepkes, plaintiff's father. An ALJ must take lay testimony into account, unless he "expressly determines to disregard such testimony and gives reasons germane to each witness for doing so." *Stout v. Comm'r*, 454 F.3d 1050, 1055-56 (9th Cir. 2006).

Mr. Tjepkes testified, and the ALJ noted, that plaintiff must always have his cane with him. Tr. 35. Plaintiff argues that such testimony indicates that plaintiff is unable to ambulate effectively and therefore satisfies the listing criteria. The ALJ recognized that plaintiff must use a cane to walk and acknowledged the general credibility of Mr. Tjepkes testimony. *Id.* Still, the

12 - OPINION AND ORDER

use of a cane does not necessarily deem a person disabled under the Listings, because it does not

limit the use of both upper extremities.  Moreover, the ALJ noted that while Mr. Tjepkes'

testimony indicates that plaintiff may be unable to perform work on his feet, "there is no

evidence of difficulties with more sedentary types of activities."  *Id.*  Therefore, the ALJ

accepted the lay witness testimony and incorporated the limitations described therein while

establishing plaintiff's RFC.

**4.      Duty to Develop the Record.**

Plaintiff argues that the ALJ did not fully develop the record because he did not order

additional psychological testing to determine the extent of plaintiff's cognitive impairments.  An

ALJ has a duty to fully and fairly develop the record.  *Smolen v. Chater*, 80 F.3d 1273, 1288 (9th

Cir. 1996) (quoting *Brown v. Heckler*, 713 F.2d 441, 443 (9th Cir. 1983)).

Because plaintiff received a Intelligence Quotient (I.Q.) score of seventy-four in 1975,

plaintiff believes that the ALJ should have ordered further testing to determine whether plaintiff

qualifies for disability under Listing 12.05C, Mental Retardation.  Listing 12.05C requires an

award of benefits if claimant demonstrates an I.Q. between sixty and seventy, in addition to other

significant physical or mental impairments.  While plaintiff did participate in special education

classes in school and was advised to leave high school by the principal due to his lack of

potential, he was able to earn his GED.  Tr. 37.  Moreover, plaintiff possessed cognitive abilities

sufficient to sustain skilled work in the past.  *Id.*  The ALJ recognized plaintiff's intellectual

capacity, and limited plaintiff to simple, routine, and repetitive work in accordance with those

limitations.  Tr. 37.  The ALJ did not fail to fully develop the record.

13 - OPINION AND ORDER

5.    **Plaintiff's RFC**

Plaintiff contends that the ALJ erred by failing to include several of plaintiff's limitations in the RFC.  First, plaintiff asserts that the ALJ improperly failed to include plaintiff's manipulative limitations in the RFC.  The ALJ noted that Disability Determination Services (DDS) medical consultants found manipulative limitations due to degenerative joint disease of the hands.  Tr. 37.  The ALJ gave this opinion little weight because it was inconsistent with the record of evidence as a whole.  *Id.*  The ALJ explained that x-rays have shown only mild degenerative changes in plaintiff's hands and 2002 x-rays of his hands were normal.  *Id.*  Medical reports found that plaintiff demonstrated good strength in both wrists against resistance.  Tr. 34. The ALJ further noted that Dr. Griffin and Dr. Bachtell found plaintiff to have no manipulative limitations.  *Id.*  Therefore, the ALJ provided sufficient explanation for finding plaintiff's alleged manipulative limitations inconsistent with the record and excluding them from the RFC.

Second, plaintiff asserts that the ALJ improperly failed to include plaintiff's inability to function due to leg spasms and improperly concluded that plaintiff could "occasionally" walk on rough surfaces; and occasionally climb, balance, crouch, or crawl.  It is clear from the record that the ALJ considered both plaintiff's leg spasms and limited mobility and concluded that the plaintiff was able to stand for only two hours out of every eight-hour day, and for only ten minutes at a time.  Tr. 31.  Moreover, the ALJ limited plaintiff to sedentary work which involves simple, routine, and repetitive activities.  Tr. 31, 37.  There was substantial evidence in the record supporting the RFC established by the ALJ.

/ / / /

/ / / /

14 - OPINION AND ORDER

**CONCLUSION**

Based on the foregoing, this court concludes that the findings of the Commissioner are based upon correct legal standards and are supported by substantial evidence existing in the record. The Commissioner's decision denying Jerry L. Tjepkes' application for benefits is AFFIRMED.

IT IS SO ORDERED.

DATED this   16   day of November, 2009.

      /s/ Ancer L. Haggerty        

Ancer L. Haggerty
United States District Judge

15 - OPINION AND ORDER